IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KONATA MATTHEWS,
                    Plaintiff.

        v.

UNITED STATES OF
AMERICA, INC.; Merrick
Garland, United States
Attorney General for
the U.S. Dept. of Justice;
Michael E. Hovowitz,
Inspector General for
the U.S. Dept. of Justice
Investigations Division;
Louis DeJoy, Post Master
General; Jacqueline Romero,
Officer of the Court;
Kevin Jayne, Officer of
the Court; Christian Henry,
Officer of the Court;
Gerald A. McHugh, Officer
of the Court; Alexandre
Turner, Officer of the
Court; James Finnegan,
Special Agent of the

Case: 1:25-cv-01471    JURY DEMAND
Assigned To : Unassigned
Assign. Date : 2/24/2025
Description: Pro Se Gen. Civ. (F-DECK)

: COMPLAINT AND
: DEMAND FOR
: JURY TRIAL
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

1 of 28

Federal Bureau of
Investigation; Milton
Washington, Interim
Warden of the Federal
Detention Center-
Philadelphia, individually
and in their official
capacities,
                Defendants.

## I. INTRODUCTION

1. Plaintiff files this action pursuant to 42 USC §§ 1981, 1983, 1985, and 1986 to redress the deprivation, under color of state law, of rights secured by the 1st, 5th, 6th, 8th, and 14th Amendment rights to the Constitution for the United States Republic.

## II. JURISDICTION & VENUE

2. This court has jurisdiction of this action pursuant to 28 USC §§ 1331, 1332, and 1343. Venue is proper under 28 USC § 1391.

3. This court has supplemental jurisdiction of the plaintiff's state and federal law claims pursuant to 28 USC

2 of 28

§ 1367, and 2671.

## III. PARTIES

4. Plaintiff, KONATA MATTHEWS, is and was at all relevant times herein, a pre-trial detainee involved in UNITED STATES OF AMERICA V. KONATA MATTHEWS, 22-CR-00324-GAM-1.

5. Defendant, UNITED STATES OF AMERICA, INC., is and was at all relevant times herein, a corporation.

6. Defendant, Merrick Garland, is and was at all relevant times herein, United States Attorney General for the U.S. Dept. of Justice. He is legally responsible for the overall operation of the U.S. Dept. of Justice.

7. Defendant, Michael E. Hovowitz, is and was at all relevant times herein, Inspector General for the U.S. Dept. of Justice Investigations Division. He is legally responsible for investigating

3 of 28

allegations of abuse within the U.S. Dept. of Justice, etc.

8. Defendant, Louis Dejoy, is and was at all relevant times herein, Post Master General. He is legally responsible for the overall operation of the United States Postal Service.

9. Defendant, Jacqueline Romero, is and was at all relevant times herein, Officer of the Court. She also upholds the Title of United States Attorney.

10. Defendant, Kevin Jayne, is and was at all relevant times herein, Officer of the Court. He also upholds the Title of Assistant United States Attorney.

11. Defendant, Christian Henry, is and was at all relevant times herein, Officer of the Court. He also upholds the Title of Deputy Clerk.

12. Defendant, Gerald A. McHugh, is

4 of 28

and was at all relevant times herein, officer of the Court. He also upholds the Title of United States District Court Judge.

13. Defendant, Alexandre Turner, is and was at all relevant times herein, officer of the Court. He also upholds the Title of Attorney.

14. Defendant, James Finnegan, is and was at all relevant times herein, Special Agent of the Federal Bureau of Investigation.

15. Defendant, Milton Washington, is and was at all relevant times herein, Interim Warden of the Federal Detention Center-Philadelphia. He is legally responsible for the overall operation of FDC-Philadelphia.

## IV. STATEMENT OF FACTS

16. On the 17th day of February, two thousand twenty-three, at about 9:45-

a.m., the plaintiff was escorted by defendant Finnegan to a conference room in the Pretrial Services Unit adjacent to the U.S. Courthouse to meet with defendant Jayne to follow-up on a guilty plea agreement. First, defendant Jayne apologized for being tardy due to the wheather conditions which set-back traffic, and gave the plaintiff a pastry to eat just as he had done so before; only this time, the "pastry" made the plaintiff feel "dizzy" [instantaneous-ly] and "blurred-his-vision," which indicated that the "pastry" was "druged." Secondly, the plaintiff "refused" to sign the guilty plea agreement based on newly-discovered evidence of a lack of full-disclosure, including, but not limited to, defendants Romero, Jayne, Henry, and McHugh committing mail, wire, insurance, and tax fraud by means of identity-theft, forgery, fraud, theft by unlawful taken of movable-property, etc., and con-fronted defendant Jayne amongst the

6 of 28

presence of defendant Finnegan, about:

a) a perjured complaint and affidavit filed on the 16th day of August, two thousand twenty-two by defendant Finnegan against the plaintiff (see Complaint and Affidavit marked as Exhibit A);

b) a perjured testimony of defendant Finnegan given to the grand jury on the 22nd day of September, two thousand twenty-two (see Grand Jury Transcript marked as Exhibit B) stating, among other aspects, that:

On the 9th day of June, two thousand twenty-two, the plaintiff's Samsung Cellphone pinged off a Tower in the area of a bank robbery; when, in fact, official records indicate that this particular phone was 'out-of-service' since the 11th day of July, two thousand twenty-one (see Phone Records marked as Exhibit C)(that being, some eleven months); and further that:

7 of 28

On the 9th day of June, two thousand twenty-two, the plaintiff matched the description of the bank robber based on his attire, and race. Said robber wore a white and blue hat, a brown and white-stripped shirt, blue jeans, and black sneakers (see videotape and still Photographs marked as Exhibit D). When the plaintiff was encountered by police, official records indicate that he wore a red Phillies hat, a light blue-stripped polo shirt, blue jeans, and black sneakers with a white nike-swoosh (see Police Dispatch Report marked as Exhibit E);

c) a "tainted" identification made by the bank manager of the plaintiff during a "show-up" at thirteenth and Spruce Street in the City and County of Philadelphia, State of Pennsylvania; in which, the plaintiff was the only 'Black' male stood to be identified, despite the fact that based on the videotape and still Photographs of the

8 of 28

bank robbery, nobody including facial recognition can positively identify the plaintiff as being the bank robber (see Videotape and Still Photographs marked as Exhibit D), which indicates that the identification made by the bank manager of the plaintiff was "coerced;"

d) how the plaintiff "found" that bag of money on the twelve hundred block of Chestnut Street in the City and County of Philadelphia, State of Pennsylvania, and 'fled' from police [two 'White' officers] because, as a 'Black' male, he feared for his welfare;

e) a guilty plea agreement that was discovered to be without full-disclosure, and based on fraud, deceit, forgery, identity-theft, etc., such as:

Refusing to disclose and withholding as evidence, a Financial Statement of Debtor of the plaintiff that was submitted to the United State's Attorney's

9 of 28

office (see Guilty Plea Agreement marked as Exhibit A, page 3, paragraph 7.a); when, in fact, said document WAS NOT AUTHORIZED by the plaintiff, but "forged" by defendants Romero, and Jayne, and "accepted" by defendants Henry, and McHugh; and

Refusing to disclose and withholding as evidence, a True Bill, to obstruct, imped, or interfere with the plaintiff's access to the court, his right to discharge the debt, and to adequately prepare his defense.

Third, defendant Jayne stated, "just sign the fucking agreement, I got other shit to do besides screwing around with you," despite the fact that defendant Jayne's breath smelled like "liquor," and he appeared to be "hungover." Immediately after the plaintiff refused to do so [while being shackled around the waist along with handcuffs and ankle-braclets], defendant Jayne "slapped"

10 of 28

the plaintiff on his face, and stated, "sign the papers you 'Black bastard.'" As the plaintiff shook his head no, defendant Finnegan struck the plaintiff twice on his head with the "Sentencing Commission Manual," "spat" on the plaintiff's "face," "elbowed" the plaintiff on his stomache, and then on his spinal-cord after he buckled, and stated, "so what I lied to the grand jury you 'fucking monkey,' just sign the papers." Defendant Jayne then "choked" the plaintiff with both hands wrapped around his neck for about twenty seconds, pushed the plaintiff from a chair to the floor, and then shoved his "penis" inside of the plaintiff's "mouth" with both hands wrapped around the plaintiff's head, thereby "choking" the plaintiff with his "penis" for about twenty seconds while repeatedly stating, "swallow it [ referring to his "sperm"] you 'nigger,' or sign the fucking papers," and only pulled his "penis"

11 of 28

out of the plaintiff's "mouth" because the plaintiff pled and signaled to defendants Jayne and Finnegan that he would sign the agreement. While the plaintiff was signing and dating the agreement, defendant Jayne stated, "if you say anything to anybody I will make sure that you never make it out of prison alive you 'nigger.'"

17. On the 2nd day of March, two thousand twenty-three, just before the change of plea hearing begun, the plaintiff handed defendant Henry a "note" informing him that he was physically and sexually assaulted by defendants Jayne and Finnegan. Defendant Henry took the "note" to the chambers of defendant McHugh. Defendant Henry returned to the courtroom and informed the plaintiff that defendant McHugh "destroyed" the "note," and said that if he spoke on it any further that he will be held in contempt of court and

12 of 28

sentenced to twenty years in prison. Plaintiff then requested that the change of plea hearing be continued to further review the guilty plea agreement.

18. On the 4th day of April, two thousand twenty-three, the plaintiff proceeded with the change of plea hearing because he feared for retaliation by defendants Jayne, Finnegan, Henry, and McHugh.

19. On the 18th day of July, two thousand twenty-three, the plaintiff objected to proceeding with sentencing based on a lack of full-disclosure, and requested that he be provided with a copy of the Financial Statement of Debtor of the plaintiff as indicated in the guilty plea agreement (see Guilty Plea Agreement marked as Exhibit A, page 3, paragraph 7.a), the True Bill, and the relevant IRS tax forms. To date, the plaintiff has not yet been provided with a copy

13 of 28

of said documents.

20. On the 20th day of July, two thousand twenty-three, the plaintiff filed a notice of defendant/debtor's intent to "withdraw" his guilty plea agreement (see Notice marked as Exhibit F), which defendants Romero, Jayne, Henry, and McHugh disregarded.

21. On the 28th day of July, two thousand twenty-three, the plaintiff filed a motion to compel a true bill in commerce (see Motion marked as Exhibit G). On the 12th day of February, two thousand twenty-four, some seven months later, defendant McHugh issued a court order stating, "this 12th day of February, 2024, it is hereby ORDERED that defendant's motion to compel a true bill in commerce, ECF 48, is DENIED as legally baseless and barred by his plea of guilty" (see Court Order marked as Exhibit H).

14 of 28

22. On the 18th day of October, two thousand twenty-three, the plaintiff objected to proceeding with sentencing, demanded to "withdraw" his guilty plea agreement, and stated that defendants Jayne and Finnegan "made" him sign the guilty plea agreement. Defendant McHugh had the plaintiff removed from the courtroom.

23. On the 6th day of November, two thousand twenty-three, the plaintiff objected to proceeding with sentencing, and requested that defendant McHugh appoint him a lawyer to review the case at it's entirety. Defendant McHugh appointed defendant Turner as counsel.

24. On the 17th day of November, two thousand twenty-three, the plaintiff met with defendant Turner at FDC Philadelphia. Although defendant Turner informed the plaintiff that everything in the case was fine,

15 of 28

that defendant Jayne was not going under the one hundred months agreed upon, and that defendant McHugh directed him not to turnover any documents or transcripts to the plaintiff, the plaintiff informed defendant Turner that he was physically and sexually assaulted by defendants Jayne and Finnegan. Defendant Turner wrote down the details, and informed the plaintiff that he was reporting the incident to proper authorities.

25. On the 30th day of November, two thousand twenty-three; the 28th day of December, two thousand twenty-three; and the 25th day of January, two thousand twenty-four, the plaintiff mailed a written complaint to defendants Garland, Hovowitz, and Dejoy regarding him being physically and sexually assaulted by defendants Jayne and Finnegan, and that defendants Romero, Jayne, Henry, McHugh, and Turner were conspiring

16 of 28

under 18 USC § 241 to violate the plaintiff's civil and human rights and liberties, including, but not limited to, officially oppressing, intimidating, harassing, and terrorizing the plaintiff through the "United States Postal Service" to be sentenced under a guilty plea agreement that he demanded to be "withdrawn" (see written Complaint marked as Exhibit I). To date, defendants Garland, Hovowitz, and Dejoy failed to act upon the plaintiff's Written Complaint.

26. On the 6th day of February, two thousand twenty-four, the plaintiff filed a motion to remove counsel, thereby accusing defendant Turner of acting as a "mere spectator," and of being in support of a 'malicious and discriminatory prosecution' instead of adequately reviewing the discovery at it's entirety, which warranted the case to be dismissed with prejudice based on 'paragraph 16.a-e of this complaint.'

Attached thereto was a declaration of the plaintiff regarding him being physically and sexually assaulted by defendants Jayne and Finnegan (see Motion and Declaration marked as Exhibit J). On the 12th day of February, two thousand twenty-four, defendant McHugh issued a court order stating, " this 12th day of February, 2024, it is hereby ORDERED that defendant's motion to remove counsel, ECF 75, shall be placed under seal by the clerk of court " (see Court Order marked as Exhibit K).

27. On the 15th day of February, two thousand twenty-four, the plaintiff was brought before defendants Henry, McHugh, Romero, Jayne, and Finnegan for a sentencing hearing. First, the plaintiff requested that another lawyer be appointed because although defendant Turner was legally assigned as counsel, he 'failed-to-appear.' Secondly, the plaintiff objected and pleaded not

18 of 28

to be sentenced under the guilty plea agreement, accused defendant Finnegan of lying to the grand jury, and demanded to stand trial before a jury of his peers. Third, defendant McHugh asked the plaintiff if he had anything that he wanted him to consider before he proceeded with sentencing, and the plaintiff replied: "well, I want to make an offer into evidence. Then I hereby submit this offer of proof and offer into evidence as follows." Defendant McHugh interrupted the plaintiff by stating: "Mr. Matthews, we're not doing that today, Sir." And the plaintiff replied: "I need to make this offer into evidence. I'm not taking this deal." Defendant McHugh then had the deputies remove the plaintiff from the courtroom, and proceeded with sentencing without the plaintiff or the assistance of counsel being present. Fourth, defendant McHugh stated: "a holding cell is adjacent to the courtroom. Mr. Matthews is literally fifty feet

away from where I sit now. There is a speaker from the courtroom to the cell. We tested the speaker this morning so that we could be clear that Mr. Matthews could hear the proceedings." Defendant McHugh further stated: "I will note for the record as well that I have observed the interactions between Mr. Jayne and Special Agent Finnegan in multiple proceedings now in this courtroom. I have no concern about how they've conducted themselves. They've done so with dignity and with fairness. And I've had both these gentlemen in my courtroom before and have no concerns whatsoever. And in fact, the recommended sentence reflects the fact that they have treated Mr. Matthews with great fairness. And so I will accept the recommended sentence and commit Mr. Matthews to the bureau of prisons for a period of one hundred months" ( see Sentencing Transcript marked

20 of 28

as Exhibit L).

28. On the 6th day of March, two thousand twenty-four, at about 6:15 a.m., FDC-Philadelphia Corrections Case Manager Rowland, and Counselor Cannon directed the plaintiff to report to the Receiving and Discharge area with his property because he was going on a writ to the Philadelphia Dept. of Prisons. In between 6:30 a.m. and 7:00 a.m., R&D officers Sutton and Doe "refused" to pack and store the plaintiff's property, which left him with the option of destroying his property, or leaving it with Mr. Rowland. Plaintiff opted to leave his property with Mr. Rowland, who picked-up the property from R&D just before the plaintiff departed with U.S. Marshals (see Videotape marked as Exhibit M). On the 11th day of April, two thousand twenty-four, the U.S. Marshals brought the plaintiff back to FDC-Philadelphia from the Philadelphia Dept. of Prisons. On

21 of 28

the 12th day of April, two thousand twenty-four, at about 9:30 a.m., immediately after Mr. Cannon handed the plaintiff his property, the plaintiff noticed that Mr. Rowland, Mr. Cannon, and the rest of the Unit Management allowed "rats, mice, roaches, bugs, ants, spiders, and other inmates to romage, damage, eat, and steal his property, including, but not limited to, destroyed obituaries, and legal and religious materials, etc." At about 11:00 a.m., the plaintiff informed then Warden, Mr. Ramos, about what happened to his property, and demanded that he be compensated for his loss. Mr. Ramos and Mr. Cannon directed the plaintiff to file a tort claim. Plaintiff then demanded that Mr. Ramos review and preserve the videotape and take immediate action because as evidenced, the plaintiff's property was intentionally romaged, stolen, damaged, and destroyed. On the 14th day of May, two thousand twenty-four, the plaintiff

22 of 28

filed Administrative Claim No. TRT-NER-2024-05719 regarding his property (see Administrative Claim marked as Exhibit N). On the 12th day of June, two thousand twenty-four, at about 12:45-p.m., while the plaintiff was organizing his legal documents, he noticed that the affidavit of defendant Finnegan, the grand jury transcript, the phone records, and the still photographs were "missing" from his property. At about 1:00p.m., the plaintiff entered Mr. Rowland's office and demanded to know who removed his legal documents from his property, and why. Mr. Rowland informed the plaintiff that defendant Jayne directed him to remove said documents from his property while he was on writ, and that although he had previously informed the plaintiff that he would have him designated to FCI-Devins to be closer to the best FBOP Medical Center due to injuries he received on the 3rd day of March, two thousand twenty-three at FDC-Philadelphia, in-

23 of 28

cluding, but not limited to, chronic care, etc., and to be closer to his Next of Kin, who moved to Boston, MA, defendants Jayne, McHugh, and Henry directed him to have the plaintiff designated to FCC-Butner 2 instead, knowing that it has the worst FBOP Medical Center, despite ongoing litigation against FCC-Butner 2 regarding the "contaminated water" that currently flows through

---

[1] Plaintiff alleges "retaliation, cruel and unusual punishment, denial of access to the court, malicious and discriminatory prosecution, racial intimidation and harassment, racial profiling and discrimination, conspiracy, due process, denial of effective assistance of counsel, and civil liability." Plaintiff also alleges the torts of "physical and sexual assault, defamation of character, fraudulent and negligent misrepresentation, gross negligence, legal malpractice, procedural due process, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract, failure to act, and supervisor liability."

24 of 28

the pipes of the prison; in which, the plaintiff has no other choice but to eat food cooked in it, drink, and shower in it.

29. At all relevant times herein, the defendants were "persons" who acted under color of state law to deprive the plaintiff of his 1st, 5th, 6th, 8th, and 14th Amendment rights to the Constitution for the United States Republic, and violated state and federal tort law.

## V. DEMAND FOR RELIEF

30. Plaintiff demands the following relief:

a) a declaratory judgment stating that the acts and omissions of defendants Jayne, Finnegan, Romero, Henry, McHugh, and Turner violated the plaintiff's 1st, 5th, 6th, 8th, and 14th Amendment rights to the Constitution for the United States Republic;

25 of 28

b) a declaratory judgment stating that the acts and omissions of defendants Jayne, Finnegan, Romero, Henry, McHugh, Turner, Garland, Hovowitz, and Dejoy violated state and federal tort law;

c) a declaratory judgment stating that defendant UNITED STATES OF AMERICA, INC., is liable for the acts and omissions of defendants Garland, Hovowitz, Dejoy, Jayne, Finnegan, Romero, Henry, McHugh, and Turner;

d) a declaratory judgment stating that defendants Garland, Hovowitz, Dejoy, Jayne, Finnegan, Romero, Henry, Mc-Hugh, and Turner are liable for their acts and omissions;

e) a preliminary injunction directing the Trump Administration to internally investigate and prosecute defendants Jayne and Finnegan criminally for physically and sexually assaulting the plaintiff;

26 of 28

f) a preliminary injunction directing the Trump Administration to internally investigate and audit defendants Romero, Jayne, Henry, McHugh, and Turner for mail, wire, insurance, and tax fraud, including, but not limited to, identity-theft, forgery, fraud, etc.;

g) a preliminary injunction directing the Trump Administration to internally investigate and prosecute defendants Romero, Jayne, Finnegan, Henry, McHugh, and Turner for conspiring under 18 USC §241 to violate the plaintiff's rights;

h) a preliminary injunction directing defendant Washington to produce a certified copy of 6-South's Housing Unit's legal logbook for 11-30-23, 12-28-23, and 1-25-24, which indicates that the plaintiff sent mail to defendants Garland, Hovowitz, and Dejoy as alleged in paragraph 25 of this complaint; and to produce the video-tape of FDC-Philadelphia's R&D on 3-6-24 from 6:15 a.m. to 7:15 a.m.;

27 of 28

RECEIVED
Mail Room

FEB 24 2025

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

i) punitive damages for pain-and-suf-fering in the amount of $250,000.00 (two hundred and fifty thousand dollars) against each defendant, jointly and severally;

j) any other relief that this court may deem necessary.

31. Plaintiff demands a jury trial pursuant to Fed. R. Civ. P 38.

32. I hereby verify that the statements made in paragraph 1-31 of this complaint are true and correct to the best of my personal knowledge, information, and belief, and are subject to the penalties under 18 USC §1746.

BY: _____
KONATA MATTHEWS

_____
RIGHT-THUMB PRINT

DATE: this 17th day of February, two thousand twenty-five

28 of 28